IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CITY OF EUDORA, KANSAS            )
                                 )
                    Plaintiff,   )
                                 )
        vs.                      )        Case No. 14-2399-JAR-KGS
                                 )
RURAL WATER DISTRICT NO. 4,      )
DOUGLAS COUNTY, KANSAS,          )
                                 )
                   Defendant.    )
_____  )

## MEMORANDUM AND ORDER

Plaintiff the City of Eudora, Kansas ("Eudora" or "the City") seeks declaratory relief regarding its right to exercise the right to provide water service within certain disputed areas and whether Defendant Rural Water District No. 4, Douglas County, Kansas ("Douglas-4" or "the District") lacks protection under 7 U.S.C. § 1926(b), specifically any protection related to the curtailment or limitation of water services by Eudora. This matter is before the Court on the parties' Cross-Motions for Summary Judgment (Docs. 25, 28). The Court held oral argument on the motions on October 26, 2105. For the reasons explained below, the Court directs the parties to submit supplemental briefs addressing the issue of whether this Court has Article III jurisdiction.

### *Procedural History*

This declaratory judgment action stems from prior litigation between the parties involving multiple orders of this Court, a jury trial, and two decisions from the Tenth Circuit Court of Appeals. The procedural history of this case is mostly undisputed and the Court assumes the reader is familiar with the Tenth Circuit opinions that precipitate the matters before

the Court.  The Court will not restate the underlying facts in detail, but will provide excerpts

from the proceedings and opinions as needed to frame its discussion of the matters presently

before it.  Moreover, the parties have helpfully stipulated to many facts and exhibits set forth in

the Pretrial Order.[1]

### *Underlying Litigation*

In 2007, Douglas-4 sued Eudora under 42 U.S.C. § 1983, claiming Eudora violated

Douglas-4's federal statutory rights.  Highly summarized, the parties disputed whether Douglas-

4 was entitled to protection under 7 U.S.C. § 1926(b), which prohibits municipalities from

poaching rural water district's customers while a USDA-guaranteed loan is in repayment.  As the

Tenth Circuit explained, rural water districts "do not enjoy § 1926(b) protection unless state law

authorizes the water district to incur federal obligations," and "[m]uch of the litigation between

Douglas-4 and Eudora therefore revolved around whether Kansas law permits rural water

districts to take out federal loans, or guarantees, or both."[2]  The case went to trial resulting in a

jury verdict and damages for Douglas-4, and the Court entered a Permanent Injunction Order

restraining Eudora from further violations of § 1926(b).[3]

### *Eudora I*

On appeal, the Tenth Circuit agreed with Eudora that this Court erred by not separating

the necessity of the loan from the guarantee, holding that the necessity of the guarantee, not the

---

[1]Doc. 22, Stipulated Facts at 3–15.

[2]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 720 F.3d 1269, 1273 (10th Cir. 2013) ("*Eudora II*") (citing *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 717–19 (10th Cir. 2004)).

[3]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, No. 07-2463-JAR (D. Kan.).

loan was the salient question.[4]  The court rejected Douglas-4's cross-appeal argument that the "accept financial or other aid" clause in K.S.A. § 82a-619(g) (1997 & Supp. 2002), which contains no "necessary" requirement, gave Douglas-4 authority to obtain a USDA guarantee and its attendant § 1926(b) protection without making a necessity showing.[5]  The Tenth Circuit vacated the verdict, holding that this Court improperly instructed the jury on the meaning of "necessary," and remanded "for a new trial for the limited purpose of determining whether Douglas-4's cooperation to secure the federal guarantee was necessary for the purposes of its organization."[6]

### Eudora II

Effective July 1, 2012, the Kansas legislature amended the relevant Kansas statute K.S.A. § 82a-619(g).  On remand, the parties filed cross-motions for summary judgment and this Court ruled that the amendment did not apply retroactively.  This Court also denied cross-motions for summary judgment, concluding that genuine issues of material fact precluded summary judgment on the "necessary" requirement.   The Court certified the retroactivity question to the Tenth Circuit, which agreed to hear the appeal.  The Court did not certify the summary judgment question of whether there was a genuine issue on the merits.  Nevertheless, Douglas-4 urged the Tenth Circuit to expand the issues on appeal to include whether this Court committed error by denying Douglas-4's summary judgment motion because the undisputed evidence discloses that the Guarantee was necessary to obtain the Loan.

----

[4]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969, 977 (10th Cir. 2011) ("*Eudora I*").

[5]*Id.* at 977 n.5.

[6]*Id.* at 980.

On July 1, 2013, the Tenth Circuit handed down its decision in *Eudora II*, affirming this Court's conclusion that Amended 84a-619(g) did not apply retroactively, and thus the "necessary" requirement still bound Douglas-4.[7]

The court also obliged Douglas-4's request, and exercised its discretion to address the proposed additional issues.  In a classic case of "be careful what you wish for," however, the court sided with Eudora, finding that "no reasonable jury could find in favor of Douglas-4 on the 'necessary' question."[8]  The court affirmed this Court's denial of summary judgment to Douglas-4, but reversed its denial of summary judgment to Eudora, and  further directed, "On remand, the district court should enter summary judgment in Eudora's favor on the question of whether Douglas-4's USDA guarantee was 'necessary to carry out the purpose of its organization' and otherwise proceed in a manner consistent with this opinion."[9]

### Post-Eudora II

On July 9, 2013, after the Tenth Circuit issued *Eudora II*, but before the mandate issued, Douglas-4 passed the following resolution:

> In light of the changes to K.S.A. 82a-619(g) passed in 2012 by the Kansas Legislature, and the recent decision by the Tenth Circuit announced on July 1, 2013, the Board of Directors for Douglas County Rural Water District No. 4 hereby re-adopt, ratify, re-affirm and re-authorize all documents, contracts, motions, resolutions, representations, certifications, cooperation given and/or granted, and the receipt of all financial aid in the form of a guarantee or other aid from the United States Department of Agriculture, relative to the loan transaction made and entered into

---

[7]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 720 F.3d 1269 (10th Cir. 2013) ("*Eudora II*").

[8]*Id.* at 1281.

[9]*Id.*

by and between the District and the First State Bank & Trust, to finance a part of the improvement of and addition to the RWD4 pipeline system enabling it to purchase water from Consolidated Rural Water District No. 6, Johnson County, Kansas under its June 5, 2002 Water Supply Contract, and, further, to direct John Nitcher to notify the USDA and First State Bank & Trust that the District desires and requests that the USDA and First State Bank & Trust re-adopt, ratify, re-affirm and re-authorize all documents, contracts, motions, resolutions, representations, certifications, cooperation given and/or granted, and the receipt of all financial aid in the form of guarantee or other aid from the United States Department of Agriculture, relative to the loan transaction made and entered into by and between the District and First State Bank & Trust, to finance a part of the improvement of and addition to the Douglas-4 pipeline system enabling it to purchase water from Consolidated Rural Water District No. 6, Johnson County, Kansas under its June 5, 2002 Water Supply Contract.  The motion containing both resolutions was approved unanimously.[10]

On July 30, 2013, the USDA sent a letter addressed to First State Bank & Trust regarding "Rural Water District #4, Douglas County," stating, in part: "As of the date of this letter, USDA, Rural Development reaffirms its loan guarantee as executed via loan note guarantee dated June 15, 2004.  A copy of the loan guarantee is attached for your convenience."[11]

 After the Tenth Circuit issued its mandate in *Eudora II*, Court staff emailed counsel to request that Eudora, as the prevailing party, submit a proposed order in accordance with the Circuit's mandate.  Counsel submitted a proposed order and Douglas-4 objected under D. Kan. Rule 58.1,  submitting its own proposed order that added language that the guarantee was not necessary, "but only as it relates to facts and circumstances prior to July 1, 2012" (the date the statute was revised).  Douglas-4 also requested language that the general necessary requirement respecting cooperation with the USDA has now been specifically removed as a result of the

---

[10]Doc. 24, Stip. Ex. 2.

[11]*Id.*, Stip. Ex. 3.

latest statutory amendments.  This extra language and/or ruling does not appear in *Eudora II*, which directed this Court "to enter summary judgment in Eudora's favor on the question of whether Douglas-4's USDA guarantee was 'necessary to carry out the purposes of its organization' and otherwise proceed in a manner consistent with this opinion."

Accordingly, on September 5, 2013 this Court entered an Order of Final Judgment on Remand, dismissing with prejudice all claims by Douglas-4 against Eudora, including the holding that "Plaintiff [Douglas-4] is not entitled to any protection under 7 U.S.C. § 1926(b).[12] The Order further stated "[t]o the extent that Defendant [Eudora] brought counterclaims against Plaintiff, such claims have been either previously dismissed without prejudice or rendered moot by the Tenth Circuit's Opinion in this case.  Accordingly, this Judgment disposes of all claims of all of the parties."[13]

On June 18, 2014, First State Bank & Trust sent a letter addressed to Douglas-4, stating in part:

> Pursuant to one Promissory Note dated June 15, 2004, on Loan No. 4233686, First State Bank and Trust lent to Rural Water District No. 4, Douglas County, Kansas, the principal amount of Two Hundred Fifty Thousand Dollars ($250,000.00) to be repaid in 120 monthly consecutive principal and interest payments of $1,794.52, beginning July 15, 2004, with interest calculated on the unpaid principal balances at an initial discounted interest rate of 6.020% per annum and 120 monthly consecutive principal and interest payments of $1,918.74 each, beginning July 15, 2014, with interest calculated on the unpaid principal balances at an interest rate of 7.520% per annum, with said borrower's final payment to be due on June 15, 2024, which would be for all principal and accrued interest not yet paid, together with any other unpaid

---

[12]Doc. 22, Stip. Fact 52.

[13]*Id.*

6

amounts under the said Note.[14]

The said loan was conditioned on and made following the Bank's receipt of the Conditional Commitment for Loan Guarantee by the United States Department of Agriculture (USDA) dated September 17, 2003.

On August 26, 2004, the USDA issued it [sic] Loan Note Guarantee, No. 18-023-0486212356.

On July 30, 2013, the USDA reaffirmed the said Loan Note Guarantee.

First State Bank reaffirms, re-authorizes and ratifies Loan No. 4233686 as more particularly described above.[15]

Following the prior litigation, Eudora expressed its desire to provide water service in the annexed areas, specifically including, during a meeting between Eudora and Douglas-4 representatives on April 3, 2014, Eudora's desire "to provide all water service in areas within the City, or to be annexed, which include the areas that Eudora annexed in 2006."[16]

In response, on April 29, 2014, Douglas-4 stated that "based on the 2012 amendment to K.S.A. 82a-619(g), [Douglas-4] had the right to provide water service to those properties that were within the geographical territory of the District, despite the annexations that had occurred in 2006 that were the subject of our recent litigation."[17]  Douglas-4 stated that its position "is that it has federal protection against the City's unilaterally taking its infrastructure or its patrons, or otherwise curtailing or limiting its ability to deliver potable water to properties within its

---

[14]*Id.*, Stip. Ex. 4.

[15]*Id.*

[16]*Id.*, Stip. Ex. 5.

[17]*Id.*

territory."[18]  Douglas-4 stated: "Notwithstanding the recent decision in the Tenth Circuit, the

Board believes the District has the exclusive right to provide potable water to the properties

within its territory . . .," and that "the City does not have the right to serve water to the properties

annexed pursuant to Ordinances 857, 861, 863 or 865."  Douglas- 4 continued:

> In 2012, the Kansas legislature amended K.S.A. 82a-619(g),
> making it clear that rural water districts had the right to "accept
> financial or other aid which the secretary of the United States
> department of agriculture is empowered to give pursuant to 7
> U.S.C. § 1921 *et seq.*"  Such Department of Agriculture "aid"
> includes the protection of 7 U.S.C. § 1926(b).
>
> Following enactment of the 2012 amendment, the District board in
> 2013 reaffirmed its 2003 loan with the First State Bank & Trust
> Company.  The USDA, also in 2013, reaffirmed the guarantee it
> earlier provided the Bank.  With the 2012 amendment and the acts
> of reaffirmation by the District Board and the USDA, the District
> was thereby empowered to accept all rights under 7 U.S.C. § 1921
> *et seq.*, including § 1926(b) protection.[19]

On July 3, 2014, Curtis Tideman, the Eudora City Attorney, sent John Nitcher, Douglas-

4's attorney, a letter seeking clarification from Douglas-4 on the legal basis for its claim to

federal protection, stating in relevant part:

> In the meantime, I wish to express that, although the City of
> Eudora does not acknowledge the existence of any federal
> protection under Section 1926(b), the City intends to conduct itself
> as though there were federal protection until such time as it can be
> determined whether or not such protection actually exists.  Your
> answers to the inquiries set forth above will be scrutinized in order
> to help determine whether there is any possibility that such
> protection actually exists.  Until such determination can be reliably
> made by the City Commission, however, no Eudora official,
> including attorneys for the City, have been authorized to seize
> Douglas-4's infrastructure, to pressure or encourage any property

---

[18]*Id.*

[19]*Id.*

8

> owner within the Douglas-4's [sic] claimed territory to refrain
> from purchasing water from the Douglas-4 [sic] or to violate
> Section 1926(b) in any other way.  Accordingly, absent official
> action taken by the City Commission at an open meeting, there is
> no possibility that the conduct of any City official, employee, or
> representative could constitute a violation of Section 1926(b) by
> the City of Eudora.[20]

On July 14, 2014, Douglas-4 replied, setting forth the basis of its legal conclusion that the reaffirmed Note and Guarantee afforded it prospective § 1926(b) protection, and noting that unlike the situation in 2007, Eudora has not sent letters to Douglas-4 threatening an imminent lawsuit in order to take away its right to serve in the annexed territories; "[s]ince there has been no violation of § 1926(b) following the 2012 amendment (according to the City), the City is not prejudiced from the amendment's prospective application to it."[21]  The District stated that pursuant to the federal mandate authorized by Kansas law, Eudora must continue to refrain from taking any action that would constitute competitive water sales in the District's territory or would interfere with the District's ability to deliver water to its patrons.[22]  The District further noted that the USDA issued a new regulation in 2013 to the effect that responsibility for initiating action in response to threatened curtailment or encroachment prohibited by § 1926(b) rests with the rural water district, and expressed the continued wish of the District's Board of Directors to explore with Eudora a territorial agreement that does not conflict with the federal statute.[23]

---

[20]Doc. 30, Ex. 1.

[21]Doc. 24, Stip. Ex. 6.

[22]*Id.*

[23]*Id.*

### *Current Proceedings*

Eudora commenced this declaratory judgment action, alleging that following the Tenth Circuit's opinion in *Eudora II* on July 1, 2013, Douglas-4 concocted a plan during its July 9, 2013 board meeting, to create new facts by "reaffirming" prior loan or guarantee documents in an attempt to avoid the Tenth Circuit's rulings and avoid following the procedures required by K.S.A. § 12-527 (2009) to transfer water service from Douglas-4 to Eudora in the disputed area. Eudora alleges that his series of "reaffirmation" acts were intended to create an excuse to claim § 1926(b) protection in spite of final judgment that ruled otherwise.

Eudora further alleges that Douglas-4 refuses to acknowledge the results of the prior litigation and Kansas statutory process required to complete the transition of water services from Douglas-4 to Eudora for the annexed areas, and has threatened to sue Eudora to enforce its federal protection claims. Douglas-4 claims that it now has federal protection under § 1926(b) because of the reaffirmed loan and guarantee, and that notwithstanding the prior litigation, that federal law precludes any taking of Douglas-4's infrastructure or territory.

As a result, Eudora seeks a declaration establishing that Kansas law permits Eudora to initiate or resume—and requires Douglas-4 to follow and complete—the procedures set forth in K.S.A. § 12-527 (2009) or alternatively, those set forth in K.S.A. § 12-541 (current), such that Eudora can properly exercise its right to begin providing water service in the disputed areas, without fear or accusation by Douglas-4 that Eudora would be violating federal protection claimed by Douglas-4 pursuant to § 1926(b) or some other authority. In Count One, Eudora seeks a declaratory judgment that Douglas-4's claims are barred by res judicata. In the alternative, should the Court determine that Douglas-4 can overcome the res judicata issue,

Eudora seeks a declaratory judgment on the merits because Douglas-4's "reaffirmation" conduct is not "accepting aid" under K.S.A. § 82a-619(g), and thus Douglas-4 lacks any protection under § 1926(b); and that its "reaffirmation" conduct was not "necessary" to accept aid under K.S.A. § 82a-619(g).

In response, Douglas-4 attempts to flip the res judicata issue onto Eudora, asserting the affirmative defense that this action involves the same K.S.A. 12-527/12-541 issues raised or which could have been raised by Eudora in the prior litigation, and that Eudora abandoned all of its claims before trial, including acquisition of the Douglas-4 assets and taking over water service.  Douglas-4 raises thirteen additional affirmative defenses, including statute of limitations, judicial estoppel, and failure to join a necessary party.

### Ripeness and Standing

While Douglas-4 did not challenge Eudora's standing or the ripeness of the declaratory judgment complaint in its submissions, the Court raised the issue at oral argument, as it has a duty to consider objections to jurisdiction *sua sponte*.[24] Article III courts are limited to deciding only "cases" and "controversies."[25]  A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists.[26]  "In every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte*

---

[24]*See Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967) ("Ripeness is a constitutional prerequisite to the exercise of jurisdiction.")

[25]U.S. Const. art. III, § 2.

[26]*See* 28 U.S.C. § 2201(a) ("in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the right and other legal relations of any interest party seeking such declaration.").

11

action."[27]

One of the doctrines reflecting Article III's case-or-controversy limitation on jurisdictional power is the doctrine of standing.  That doctrine requires federal courts, before considering the merits of an action, to "'satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[28]  Eudora, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[29]  The Supreme Court has found the "irreducible constitutional minimum of standing" to contain three elements:

> First the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[30]

This inquiry is closely tied to another justiciability issue—ripeness.  The ripeness doctrine asks "'whether there is sufficient hardship to the parties in withholding court

---

[27]*Entek GRB, LLC v. Stull Ranches, LLC*, 113 F. Supp. 3d 1113, 1123 (D. Colo. 2015) (citing *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980).

[28]*Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086 (D. Kan. 2015) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)) (internal quotation omitted).

[29]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[30]*Id.* at 560–61 (internal quotation marks and citations omitted).

consideration until there is enforcement action.'"[31]  As the Supreme Court has noted, the purpose

of the ripeness doctrine "'is to prevent the courts, through premature adjudication, from

entangling themselves in abstract disagreements.'"[32]  Ripeness, therefore, "'is peculiarly a

question of timing,'"[33] and it cautions courts against adjudicating "'contingent future events that

may not occur as anticipated, or indeed may not occur at all.'"[34] Two additional factors, "'the

fitness of the issues for judicial decision'" and "'the hardship to the parties of withholding court

consideration,,'" also inform any analysis of ripeness.[35]  The fitness of an issue for judicial

decision depends at least in part on the extent to which the issue is "purely legal, and will not be

clarified by further factual development."[36]  In considering the hardship to the parties of

withholding consideration, a court must be mindful that "'[o]ne does not have to await the

consummation of threatened injury to obtain preventive relief.  If the injury is certainly

impending, that is enough.'"[37]  Courts have recognized that applying the ripeness doctrine in the

declaratory judgment context presents a unique challenge.[38]

---

[31] *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

[32] *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Labs.*, 387 U.S. at 148).

[33] *Id.* (quoting *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974)).

[34] *Id.* at 580–81 (quoting Wright, Miller & Cooper, § 3532).

[35] *Id.* at 581 (quoting *Abbott Labs.*, 387 U.S. at 149).

[36] *Id.*; *see also Abbot Labs.*, 387 U.S. at 149.

[37] *Regional Rail Reorg. Act Cases*, 419 U.S. at 143 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, *reaff'd*, 263 U.S. 350 (1923)).

[38] *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *Rhode Island Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir. 1994) ("Applying this [*Abbott Labs*] test in the declaratory judgment context often requires custom tailoring, for there are at least two salient differences between declaratory actions and the mine-run of other cases: first, declaratory relief is more likely to be discretionary; and, second, declaratory actions contemplate

The foregoing principles raise the issue of whether the parties can pursue their respective declaratory judgment claims/affirmative defenses due to a lack of ripeness and/or standing.  As the parties proffered at oral argument, in the relevant exchange between the parties in April and July of 2014,  Eudora emphasized that it has not taken, nor would it take, any action that might be considered a violation of § 1926(b) until such time as it can be determined whether or not such protection exists, and requested Douglas-4 to clarify specific questions about Douglas-4's claim.  Douglas-4 laid out its position that, notwithstanding the Tenth Circuit's decision in *Eudora II*, it presently claims § 1926(b) protection because of the reaffirmed Loan and Guarantee and Eudora must continue to refrain from taking any action that would interfere with the District's ability to deliver water to its patrons; if Eudora goes forward, it will consider such actions a violation of § 1926(b).  Douglas-4 closed by returning to the original message of its Board, which was to attempt to settle the matter.[39]

While the parties are certainly at an impasse, this correspondence between the parties begs the question of whether a threat to commence litigation constitutes an "actual injury" for Article III purposes.  Indeed, it appears that Eudora is requesting what amounts to an advisory opinion as to the validity of defenses to a suit to enforce the District's potential federal protection claim; similarly, the District is attempting to secure what amounts to an advisory opinion on the validity of defenses it might raise in future state court proceedings.[40]  Both parties

---

an '*ex ante* determination of rights' that 'exists in some tension with traditional notions of ripeness'" (citations omitted)).

[39]Doc. 24, Stip. Ex. 5

[40]*See Calderon v. Ashmus*, 523 U.S. 740, 747 (1998) (holding that a prisoner may not use a declaratory judgment action to determine the validity of a defense that a State might raise in a future habeas proceeding); *Coffman v. Breeze Corps.*, 323 U.S. 316, 323–24 (1945) (noting that "[t]he declaratory judgment procedure . . . may not be made the medium for securing an advisory opinion in a controversy which has not arisen.").

argue that their respective claims are barred by this Court's previous judgment.  In this case, however, Eudora has not initiated state procedure to exercise its rights to begin providing water service in the disputed areas, nor has the District filed an action asserting federal protection under § 1923(b).  Instead, this Court appears to be in the position of determining the preclusion consequences of its own judgment in the prior litigation on another court in a potential lawsuit yet to be filed—in effect, enjoining the parties from proceeding under state law or filing an action to enforce federal rights.[41]   The Court expresses similar concerns regarding the advisory nature of the alternative challenges to the merits of Douglas-4's claim of § 1926(b) protection, Eudora's claim that it is entitled to proceed under K.S.A. 12-527/12-541, and the District's myriad challenges to any such procedure or action.

Accordingly, the Court cannot proceed on either the res judicata or merits issues until it is confident that the threshold jurisdictional issue has been satisfied.  Because the Court raises this issue *sua sponte*, however, the parties are afforded the opportunity to address the issue beyond oral argument, and are directed to file supplemental briefs addressing the standing and ripeness issues raised above, as well as any other issues relevant to Article III jurisdictional concerns.

**IT IS THEREFORE ORDERED BY THE COURT** that the parties shall file supplemental briefs on the jurisdictional issues as follows: Plaintiff Eudora shall file its brief within twenty-one (21) days of the date of this Order; Defendant Douglas-4 shall file its response

---

[41]*Smith v. Bayer Corp.*, 564 U.S. 299, 131 S. Ct. 2368, 2375 (2011) (explaining that "a court does not usually 'get to dictate to other courts the preclusion consequences of its own judgment. Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court. . . .'" ) (quoting 18 C. Wright, A. Miller, & E. Cooper, Fed. Practice & Procedure § 4405, at 82 (2d ed. 2002)); *Covanta Onondaga Ltd. v. Onondaga Cnty. Res. Recovery Agency*, 318 F.3d 392, 398 (2d Cir. 2003); *Midway Motor Lodge v. Innkeepers' Telemgm't & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995).

within twenty-one (21) days of Eudora's brief; Eudora may file a reply brief within fourteen (14)

days of Douglas-4's response.

**IT IS SO ORDERED**.

Dated: March 23, 2016

         S/ Julie A. Robinson
        JULIE A. ROBINSON
        UNITED STATES DISTRICT JUDGE