## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CITY OF EUDORA, KANSAS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-2399-JAR-KGS** |
| | ) | |
| **RURAL WATER DISTRICT NO. 4,** | ) | |
| **DOUGLAS COUNTY, KANSAS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM AND ORDER

This declaratory judgment action stems from prior litigation between the parties dating back to 2007, involving multiple orders of this Court, a jury trial, and two decisions from the Tenth Circuit Court of Appeals.  The Court resumes the Sisyphean task of sorting out who may provide water service to the citizens of Eudora, Kansas, as Plaintiff the City of Eudora, Kansas ("Eudora" or "the City") now seeks declaratory relief regarding its exercise of the right to provide water service within certain disputed areas and whether Defendant Rural Water District No. 4, Douglas County, Kansas ("Douglas-4" or "the District") lacks protection under 7 U.S.C. § 1926(b).  This matter is before the Court on the parties' Cross-Motions for Summary Judgment (Docs. 25, 28).  The Court held oral argument on the motions and directed the parties to submit supplemental briefs addressing whether this Court has Article III jurisdiction (Doc. 39).  After considering the arguments and submissions of the parties, and for the reasons explained in detail below, the Court grants Eudora's motion in part and denies Douglas-4's motion on the issue of whether Douglas-4 has protection under § 1926(b) .

## I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[5]

The moving party bears the initial burden of providing the court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6] Where, as here, the movant bears the burden of proof on a claim or defense, it must show that the undisputed facts establish every element of the claim entitling it to judgment

---

[1]Fed. R. Civ. P. 56(a).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

as a matter of law.[7]  If the moving party properly supports its motion, the burden shifts to the

non-moving party, "who may not rest upon the mere allegation or denials of his pleadings, but

must set forth specific facts showing that there is a genuine issue for trial."[8]  In setting forward

these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition

transcripts, or specific exhibits incorporated therein."[9]  If the evidence offered in opposition to

summary judgment is merely colorable or is not significantly probative, summary judgment may

be granted.[10]  A party opposing summary judgment "cannot rely on ignorance of the facts, on

speculation, or on suspicion, and may not escape summary judgment in the mere hope that

something will turn up at trial."[11]  Put simply, the nonmoving party must "do more than simply

show there is some metaphysical doubt as to the material facts."[12]  "Where, as here, the parties

file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be

considered other than that filed by the parties, but summary judgment is nevertheless

inappropriate if disputes remain as to material facts."[13]

        Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it

is an important procedure "designed to secure the just, speedy and inexpensive determination of

---

        [7]*See id.* at 331 ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c) that would entitle it to a directed verdict if not controverted at trial.").

        [8]*Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993).

        [9]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

        [10]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994).

        [11]*Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1998), *aff'd*, 939 F.2d 910 (10th Cir. 1991).

        [12]*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

        [13]*James Barlow Family Ltd. P'ship v. David M Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

every action."[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."

## II.    Procedural History and Uncontroverted Facts

The procedural history of this case is mostly undisputed and the Court assumes the reader is familiar with the Tenth Circuit opinions that precipitate the matters before the Court.  The Court will not restate the underlying facts in detail, but will provide excerpts from the proceedings and opinions as needed to frame its discussion of the matters presently before it. Moreover, the parties have helpfully stipulated to many facts and exhibits set forth in the Pretrial Order.[15]  Nevertheless, Douglas-4 asserts additional facts replete with argument and conclusory statements, particularly with respect to its spin on prior proceedings and submissions.  These matters are well-documented and/or the best evidence thereof, and Douglas-4's overkill approach to the factual record has required the Court to expend excessive time and effort identifying and disregarding facts that are repetitive, duplicative, material, conclusory, or argumentative.

With these observations in mind, the Court determines the following material facts are uncontroverted, stipulated to, or viewed in the light most favorable to the nonmoving party for purposes of summary judgment.

### *Underlying Litigation*

In 2007, Douglas-4 sued Eudora under 42 U.S.C. § 1983, claiming Eudora violated

---

[14]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[15]Doc. 22, Stipulated Facts at 3–15.

Douglas-4's federal statutory rights (the "Prior Litigation").[16]  Highly summarized, the parties

disputed whether Douglas-4 was entitled to protection under 7 U.S.C. § 1926(b), which prohibits

municipalities from poaching rural water district's customers under K.S.A. 12-527 while a

USDA-guaranteed loan is in repayment.  As the Tenth Circuit explained, rural water districts "do

not enjoy § 1926(b) protection unless state law authorizes the water district to incur federal

obligations," and "[m]uch of the litigation between Douglas-4 and Eudora therefore revolved

around whether Kansas law permits rural water districts to take out federal loans, or guarantees,

or both."[17]  Eudora filed counterclaims for tortious interference with business advantage, fraud,

abuse of process and declaratory relief with respect to Douglas-4's right to protection under

§ 1926(b), Eudora's right to invoke state law without violating the federal statute, and whether

Douglas-4 had waived its right to compensation under K.S.A. 12-527.[18]  Eudora's tort

counterclaims were dismissed without prejudice.[19]  The case went to trial resulting in a jury

verdict in favor of Douglas-4 on all issues and damages for Douglas-4.  The Court then enjoined

Eudora from serving or limiting Douglas-4's service to the annexed areas.[20]

### *Eudora I*

On appeal, the Tenth Circuit agreed with Eudora that this Court erred by not separating

---

[16]Case No. 07-2463-JAR.

[17]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 720 F.3d 1269, 1273 (10th Cir. 2013) ("*Eudora II*") (citing *Pittsburg Cnty. Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d 694, 717–19 (10th Cir. 2004)).

[18]*Rural Water Dist. No. 4, Douglas Cnty., Kan.. v. City of Eudora, Kan.*, 604 F. Supp. 2d 1298, 1305 (D. Kan. 2009); No. 07-2463, Doc. 105.

[19]*Id.* n.1.

[20]No. 07-2463, Doc. 409.

the necessity of the loan from the guarantee, holding that the necessity of the guarantee, not the loan was the salient question.[21]   The court rejected Douglas-4's cross-appeal argument that the "accept financial or other aid" clause in K.S.A. 82a-619(g) (1997 & Supp. 2002), which contains no "necessary" requirement, gave Douglas-4 authority to obtain a USDA guarantee and its attendant § 1926(b) protection without making a necessity showing.[22]   The Tenth Circuit vacated the verdict, holding that this Court improperly instructed the jury on the meaning of "necessary," and remanded "for a new trial for the limited purpose of determining whether Douglas-4's cooperation to secure the federal guarantee was necessary for the purposes of its organization."[23]

Relevant to the present proceedings, the court went on to review the legal grounds upon which this Court based its conclusion that Eudora curtailed or limited Douglas-4's water service.[24]   The court first noted that K.S.A. 12-527, the statute cited by the parties and in effect in 2007, was repealed in March 2010 and replaced by K.S.A. 12-540 *et seq.*, and thus applied the law in existence at the time of the appeal.[25]   K.S.A. 12-540 and 541(a) describe the process by which a city may designate itself or some other water supplier for annexed property.  The court stated that as a matter of Kansas law, "an annexing municipality is not compelled to engage in some post-annexation conduct that would necessarily curtail or limit a water district's ability to serve the annexed area," because the statutes provide that "[f]ollowing annexation, the water

---

[21]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969, 977 (10th Cir. 2011) ("*Eudora I*").

[22]*Id.* at 977 n.5.

[23]*Id.* at 980.

[24]*Id*. at 984.

[25]*Id.* n.8.

district shall remain the water service provider to the annexed area unless the city gives written notice designating a different supplier."[26]  Thus, annexation alone does not cause curtailment.[27] Instead, there must be some further action that limits the protected water district's ability to serve its customers, in this case, Eudora's threat to either de-annex a customer's protected area or force an appraisal process by filing suit against Douglas-4.[28]

The court went on to describe actions by a city that would *not* curtail or limit water services by a protected district:

> This might occur where, after annexation, a city allows the water district to continue as before.  Or it may initiate negotiations with the district for purchase of the district's assets.  When a city first notifies a water district of its intent, there is nothing impeding a customer from obtaining—or the water district from providing—water services.  Under Kansas law, for instance, the parties still must agree on the assets' value.  If they cannot agree, then no change in water service provider shall occur until at least 120 days pass and the parties complete mandatory mediation. *See* K.S.A. § 12-541(a).  If mediation is unsuccessful, only then is a third-party appraiser appointed.  Throughout this entire period, the water district may continue to provide or make available water service, and ultimately the city may decide to either assert or waive its appraisal rights as the situation develops.  Of course, a city's assertion of appraisal rights *may* give rise to an actual curtailment or limitation, but this occurs only when there is evidence that the city's assertions impeded the water district's ability to provide or make service available or deterred customers from obtaining the water district's services.[29]

---

[26]*Id.* at 985 (citing K.S.A. 12-541(a)).

[27]*Id.* 984–85.

[28]*Id.* at 985–87.

[29]*Id.* at 986 (emphasis added).

### *Eudora II*

Effective July 1, 2012, the Kansas legislature amended the second clause of the

relevant Kansas statute, K.S.A. 82a-619(g), striking out the cross-reference to repealed federal

statutes and replacing it with a cross-reference to 7 U.S.C. § 1921 *et seq*, thus bringing § 1926(b)

within the statute's ambit and empowering water districts to "accept financial or other aid" from

the USDA without the requirement of necessity.[30]  On remand, the parties filed cross-motions for

summary judgment and this Court ruled that the amendment did not apply retroactively.  This

Court also denied summary judgment for both parties, concluding that genuine issues of material

fact precluded summary judgment on the "necessary" requirement.  The Court certified the

retroactivity question to the Tenth Circuit, which agreed to hear the appeal. The Court did not

certify the summary judgment question.  Nevertheless, Douglas-4 urged the Tenth Circuit to

expand the issues on appeal to include whether this Court "committed error by denying Douglas-

4's summary judgment motion because the undisputed evidence discloses that the Guarantee was

necessary . . . to obtain the Bank Loan?"

On July 1, 2013, the Tenth Circuit handed down its decision in *Eudora II*, affirming this

Court's conclusion that amended K.S.A. 84a-619(g) did not apply retroactively, and thus the

"necessary to carry out the purposes of its reorganization" requirement in the first clause still

bound Douglas-4.[31]  The court also obliged Douglas-4's request, and exercised its discretion to

address the proposed additional issues.  In a classic case of "be careful what you wish for,"

however, the court sided with Eudora, finding that "no reasonable jury could find in favor of

---

[30]*Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 720 F.3d 1269, 1275 (10th Cir. 2013) ("*Eudora II*").

[31]*Id.* 1275–77.

Douglas-4 on the 'necessary' question."[32]  The court affirmed this Court's denial of summary

judgment to Douglas-4, but reversed its denial of summary judgment to Eudora, and  further

directed: "On remand, the district court should enter summary judgment in Eudora's favor on the

question of whether Douglas-4's USDA guarantee was 'necessary to carry out the purpose of its

organization' and otherwise proceed in a manner consistent with this opinion."[33]

### *Post-Eudora II*

On July 9, 2013, after the Tenth Circuit issued *Eudora II*, but before the mandate issued,

Douglas-4 passed the following resolution:

> In light of the changes to K.S.A. 82a-619(g) passed in 2012 by the
> Kansas Legislature, and the recent decision by the Tenth Circuit
> announced on July 1, 2013, the Board of Directors for Douglas
> County Rural Water District No. 4 hereby re-adopt, ratify, re-
> affirm and re-authorize all documents, contracts, motions,
> resolutions, representations, certifications, cooperation given
> and/or granted, and the receipt of all financial aid in the form of a
> guarantee or other aid from the United States Department of
> Agriculture, relative to the loan transaction made and entered into
> by and between the District and the First State Bank & Trust, to
> finance a part of the improvement of and addition to the RWD4
> pipeline system enabling it to purchase water from Consolidated
> Rural Water District No. 6, Johnson County, Kansas under its June
> 5, 2002 Water Supply Contract, and, further, to direct John Nitcher
> to notify the USDA and First State Bank & Trust that the District
> desires and requests that the USDA and First State Bank & Trust
> re-adopt, ratify, re-affirm and re-authorize all documents,
> contracts, motions, resolutions, representations, certifications,
> cooperation given and/or granted, and the receipt of all financial
> aid in the form of guarantee or other aid from the United States
> Department of Agriculture, relative to the loan transaction made
> and entered into by and between the District and First State Bank
> & Trust, to finance a part of the improvement of and addition to
> the Douglas-4 pipeline system enabling it to purchase water from

---

[32]*Id.* at 1281.

[33]*Id.*

Consolidated Rural Water District No. 6, Johnson County, Kansas
under its June 5, 2002 Water Supply Contract.  The motion
containing both resolutions was approved unanimously.[34]

On July 30, 2013, the USDA sent a letter addressed to First State Bank & Trust regarding "Rural Water District #4, Douglas County," stating, in part: "As of the date of this letter, USDA, Rural Development reaffirms its loan guarantee as executed via loan note guarantee dated June 15, 2004.  A copy of the loan guarantee is attached for your convenience."[35]

After the Tenth Circuit issued its mandate in *Eudora II*, Court staff emailed counsel to request that Eudora, as the prevailing party, submit a proposed order in accordance with the Circuit's mandate.  Counsel submitted a proposed order and Douglas-4 objected under D. Kan. Rule 58.1, submitting its own proposed order that added language that the Guarantee was not necessary, "but only as it relates to facts and circumstances prior to July 1, 2012" (the date the statute was revised).  Douglas-4 also requested language that the general necessary requirement respecting cooperation with the USDA has now been specifically removed as a result of the latest statutory amendments.  This extra language and/or ruling does not appear in *Eudora II*, however, which directed this Court "to enter summary judgment in Eudora's favor on the question of whether Douglas-4's USDA guarantee was 'necessary to carry out the purposes of its organization' and otherwise proceed in a manner consistent with this opinion."

On September 5, 2013 this Court entered an Order of Final Judgment on Remand, dismissing with prejudice all claims by Douglas-4 against Eudora, including the holding that

---

[34]Doc. 24, Stip. Ex. 2.

[35]*Id.*, Stip. Ex. 3.

"Plaintiff [Douglas-4] is not entitled to any protection under 7 U.S.C. § 1926(b)."[36]  The Order

further stated "[t]o the extent that Defendant [Eudora] brought counterclaims against Plaintiff,

such claims have been either previously dismissed without prejudice or rendered moot by the

Tenth Circuit's Opinion in this case.  Accordingly, this Judgment disposes of all claims of all of

the parties."[37]

On June 18, 2014, First State Bank & Trust sent a letter addressed to Douglas-4, stating

in part:

> Pursuant to one Promissory Note dated June 15, 2004, on Loan
> No. 4233686, First State Bank and Trust lent to Rural Water
> District No. 4, Douglas County, Kansas, the principal amount of
> Two Hundred Fifty Thousand Dollars ($250,000.00) to be repaid
> in 120 monthly consecutive principal and interest payments of
> $1,794.52, beginning July 15, 2004, with interest calculated on the
> unpaid principal balances at an initial discounted interest rate of
> 6.020% per annum and 120 monthly consecutive principal and
> interest payments of $1,918.74 each, beginning July 15, 2014, with
> interest calculated on the unpaid principal balances at an interest
> rate of 7.520% per annum, with said borrower's final payment to
> be due on June 15, 2024, which would be for all principal and
> accrued interest not yet paid, together with any other unpaid
> amounts under the said Note.[38]
>
> The said loan was conditioned on and made following the Bank's
> receipt of the Conditional Commitment for Loan Guarantee by the
> United States Department of Agriculture (USDA) dated September
> 17, 2003.
>
> On August 26, 2004, the USDA issued it [sic] Loan Note
> Guarantee, No. 18-023-0486212356.
>
> On July 30, 2013, the USDA reaffirmed the said Loan Note

---

[36]Doc. 22, Stip. Fact 52.

[37]*Id.*

[38]*Id.*, Stip. Ex. 4.

Guarantee.

First State Bank reaffirms, re-authorizes and ratifies Loan No. 4233686 as more particularly described above.[39]

Following the prior litigation, Eudora expressed its desire to provide water service in the annexed areas during a meeting between Eudora and Douglas-4 representatives on April 3, 2014, specifically including Eudora's desire "to provide all water service in areas within the City, or to be annexed, which include the areas that Eudora annexed in 2006."[40]

In response, on April 29, 2014, the Douglas-4 Board of Directors sent a letter to the Eudora City Commission explaining its position that "based on the 2012 amendment to K.S.A. 82a-619(g), [Douglas-4] had the right to provide water service to those properties that were within the geographical territory of the District, despite the annexations that had occurred in 2006 that were the subject of our recent litigation."[41]  Douglas-4 stated that its position "is that it has federal protection against the City's unilaterally taking its infrastructure or its patrons, or otherwise curtailing or limiting its ability to deliver potable water to properties within its territory."[42]  Douglas-4 stated: "Notwithstanding the recent decision in the Tenth Circuit, the Board believes the District has the exclusive right to provide potable water to the properties within its territory . . .," and that "the City does not have the right to serve water to the properties annexed pursuant to Ordinances 857, 861, 863 or 865."  Douglas- 4 continued:

In 2012, the Kansas legislature amended K.S.A. 82a-619(g),

---

[39]*Id.*

[40]*Id.*, Stip. Ex. 5.

[41]*Id.*

[42]*Id.*

> making it clear that rural water districts had the right to "accept financial or other aid which the secretary of the United States department of agriculture is empowered to give pursuant to 7 U.S.C. § 1921 *et seq.*" Such Department of Agriculture "aid" includes the protection of 7 U.S.C. § 1926(b).
>
> Following enactment of the 2012 amendment, the District board in 2013 reaffirmed its 2003 loan with the First State Bank & Trust Company. The USDA, also in 2013, reaffirmed the guarantee it earlier provided the Bank. With the 2012 amendment and the acts of reaffirmation by the District Board and the USDA, the District was thereby empowered to accept all rights under 7 U.S.C. § 1921 *et seq.*, including § 1926(b) protection.[43]

The District went on to state that annexation did not constitute a curtailment or limitation of its right to serve water, and that the City was not now in violation of federal law. It made clear, however, that "if the City seizes District infrastructure, or pressures or encourages any property owner within the District's territory to refrain from purchasing water from the District, it will consider such an action a violation of § 1926(b)"[44] The District continued,

> At the same time, the District very much continues to wish to avoid any litigation with Eudora. If the City Commission is disinclined to meet with the Board, please understand that there are mandatory steps, outlined in K.S.A. 12-540, *et seq.*, that a Kansas city and a rural water district now have to undertake as a city considers the takeover of the water district's territory and the purchase of its property, facilities, improvements and going concern value of the facilities located within the territory to be annexed. . . . The parties have to discuss and mediate, and if they cannot reach an accommodation or agreement during that process, ultimately values are established by a district court after a trial, and possibly later by a higher court on appeal. . . . K.S.A. 12-541 provides that the District shall not discontinue or limit service to its customers during the period of negotiations. . . . Any litigation, of course, will include matters beyond valuing District property. . . . In light of the foregoing, the District is willing to participate in

---

[43]*Id.*

[44]*Id.* at 4.

> settlement discussions which may include valuing its assets,
> including the going concern value of the areas where the City has
> indicated it wants to provide water service, but first and foremost
> the Board would like to explore with the City Commission the
> usefulness of a territorial agreement.  Although it believes the
> federal law precludes any taking of the District's infrastructure or
> territory, the Board is willing to consider alternatives including
> following the procedures outlined in K.S.A. 12-540, *et seq.*[45]

On July 3, 2014, the Eudora City Attorney sent Douglas-4's attorney, a letter seeking

clarification from Douglas-4 on the legal basis for its claim to federal protection, stating in

relevant part:

> In the meantime, I wish to express that, although the City of
> Eudora does not acknowledge the existence of any federal
> protection under Section 1926(b), the City intends to conduct itself
> as though there were federal protection until such time as it can be
> determined whether or not such protection actually exists.  Your
> answers to the inquiries set forth above will be scrutinized in order
> to help determine whether there is any possibility that such
> protection actually exists.  Until such determination can be reliably
> made by the City Commission, however, no Eudora official,
> including attorneys for the City, have been authorized to seize
> Douglas-4's infrastructure, to pressure or encourage any property
> owner within the Douglas-4's [sic] claimed territory to refrain
> from purchasing water from the Douglas-4 [sic] or to violate
> Section 1926(b) in any other way.  Accordingly, absent official
> action taken by the City Commission at an open meeting, there is
> no possibility that the conduct of any City official, employee, or
> representative could constitute a violation of Section 1926(b) by
> the City of Eudora.[46]

On July 14, 2014, counsel for Douglas-4 replied, setting forth the basis of its legal

conclusion that the reaffirmed Note and Guarantee afforded it prospective § 1926(b) protection,

and noting that unlike the situation in 2007, Eudora has not sent letters to Douglas-4 threatening

---

[45]*Id.*

[46]Doc. 30, Ex. 1.

an imminent lawsuit in order to take away its right to serve in the annexed territories; "[s]ince there has been no violation of § 1926(b) following the 2012 amendment (according to the City), the City is not prejudiced from the amendment's prospective application to it."[47]  The District stated that pursuant to the federal mandate authorized by Kansas law, Eudora must continue to refrain from taking any action that would constitute competitive water sales in the District's territory or would interfere with the District's ability to deliver water to its patrons.[48]  The District further noted that the USDA issued a new regulation in 2013 to the effect that responsibility for initiating action in response to threatened curtailment or encroachment prohibited by § 1926(b) rests with the rural water district, and expressed the continued wish of the District's Board of Directors to explore with Eudora a territorial agreement that does not conflict with the federal statute.[49]  Counsel ended by stating, "[f]inally, please let me return to the original message of the Douglas-4 Board of Directors, which is that it continues to wish to explore with the Eudora City Commission the usefulness of a territorial agreement that does not conflict with the federal statute."[50]

The record does not reflect any further correspondence or meetings between the parties. Instead, Eudora commenced this declaratory judgment action on August 13, 2014, seeking a declaration establishing that Kansas law permits Eudora to initiate or resume—and requires Douglas-4 to follow and complete—the procedures set forth in K.S.A. 12-527 (2009) or

---

[47]Doc. 24, Stip. Ex. 6.

[48]*Id.*

[49]*Id.*

[50]*Id.*

alternatively, those set forth in K.S.A. 12-541 (current), such that Eudora can properly exercise its right to begin providing water service in the disputed areas, without fear or accusation by Douglas-4 that Eudora would be violating federal protection claimed by Douglas-4 pursuant to § 1926(b) or some other authority.  In Count I, Eudora seeks a declaratory judgment that Douglas-4's claims are barred by res judicata.  In Count II, should the Court determine that Douglas-4 can overcome the res judicata issue, Eudora seeks a declaratory judgment on the merits because Douglas-4's "reaffirmation" conduct is not "accepting aid" under K.S.A. 82a-619(g), and thus Douglas-4 lacks any protection under § 1926(b); and in Count III, that its "reaffirmation" conduct was not "necessary" to accept aid under K.S.A. 82a-619(g).   In turn, Douglas-4 attempts to flip the res judicata issue onto Eudora, asserting the affirmative defense that this action involves the same K.S.A. 12-527/12-541 issues raised or which could have been raised by Eudora in the prior litigation, and that Eudora abandoned all of its claims before trial, including acquisition of the Douglas-4 assets and taking over water service.  Douglas-4 raises thirteen additional affirmative defenses, and seeks summary judgment on the statute of limitations, judicial estoppel, and failure to join a necessary party defenses.

## III.   Discussion

### A.    Jurisdiction

While Douglas-4 initially did not challenge Eudora's Article III jurisdiction in its submissions, the Court raised the issue at oral argument, as it has a duty to consider objections to jurisdiction *sua sponte*.[51]  Accordingly, the Court afforded the parties the opportunity to address

---

[51]*Entek GRB, LLC, v. Stull Ranches, LLC*, 113 F. Supp. 3d 1113, 1123 (D. Colo. 2015) ("In every case and at every stage of the proceeding, a federal court must satisfy itself as to its own jurisdiction, even if doing so requires *sua sponte* action.") (citing *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1297 (10th Cir. 1980)).

the jurisdictional issue beyond oral argument, and both filed supplemental briefs addressing the standing and ripeness issues raised by the Court.[52]  Eudora urges that it has standing to bring this ripe action; Douglas-4 counters that Eudora lacks standing and the case is not ripe, save for the issue of whether res judicata bars Eudora from proceeding under K.S.A. 12-527 and/or 12-541.

"A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act."[53]  The Declaratory Judgment Act states in pertinent part that, "[i]n a case of actual controversy within its jurisdiction . . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[54]  The Act "was an authorization, not a command.  It gave federal district courts competence to make a declaration of rights; it did not impose a duty to do so."[55]

A party seeking a declaratory judgment must overcome two hurdles.  First, there must be an "actual controversy" at issue.[56]  In determining whether an "actual controversy" exists, the Supreme Court has explained, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the existence of a

---

[52]Order, Doc. 39; Docs. 40, 41, 42.

[53]*Marlin Oil Corp. v. Lurie*, 417 F. App'x 740, 745 (10th Cir. 2011) (citing *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004)).

[54]28 U.S.C. § 2201(a).

[55]*Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).

[56]*Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008).

declaratory judgment."[57]  Once the court is satisfied of an "actual controversy," it considers

several case-specific factors to decide whether to exercise its declaratory judgment authority.[58]

A non-exclusive list of factors includes:

> (1) whether a declaratory action would settle the controversy; (2)
> whether it would serve a useful purpose in clarifying the legal
> relations at issue; (3) whether the declaratory remedy is being used
> merely for the purpose of procedural fencing or to provide an arena
> for a race to *res judicata*; (4) whether use of a declaratory action
> would increase friction between our federal and state courts and
> improperly encroach upon state jurisdiction; and (5) whether there
> is an alternative remedy which is better or more effective.[59]

### *Actual Controversy*

In the context of declaratory judgment actions, the Supreme Court has provided a

framework for assessing whether an Article III case or controversy exists.  In the constitutional

sense, a "controversy" is "distinguished from a difference or dispute of a hypothetical or abstract

character; from one that is academic or moot."[60]  One of the doctrines reflecting Article III's

case-or-controversy limitation on jurisdictional power is the doctrine of standing.  That doctrine

requires federal courts, before considering the merits of an action, to "satisfy themselves that the

plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the

plaintiff's] invocation of federal-court jurisdiction."[61]  Eudora, as the party invoking federal

---

[57]*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations and quotations omitted).

[58]*Surefoot*, 531 F.3d at 1240.

[59]*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980–81 (10th Cir. 2012) (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

[60]*Aetna Life Ins. Co. V. Haworth*, 300 U.S. 227, 240 (1937) (citing *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116 (1920)).

[61]*Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F. Supp. 3d 1086, 1091 (D. Kan. 2015) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[62]  The Supreme Court has found the "irreducible constitutional minimum of standing" to contain three elements:

> First the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[63]

This inquiry is closely tied to another justiciability issue—ripeness.  The ripeness doctrine asks "'whether there is sufficient hardship to the parties in withholding court consideration until there is enforcement action.'"[64]  As the Supreme Court has noted, the purpose of the ripeness,  doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements."[65]  Ripeness, therefore, "is peculiarly a question of timing,"[66] and it cautions courts against adjudicating "contingent future events that may not occur as anticipated, or indeed may not occur at all."[67]  Two additional factors, "the

---

[62]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

[63]*Id.* at 560–61 (internal quotation marks and citations omitted).

[64]*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

[65]*Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (quoting *Abbott Labs.*, 387 U.S. at 148).

[66]*Id.* (quoting *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974)).

[67]*Id.* at 580–81 (quoting Wright, Miller & Cooper, § 3532).

fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration," also inform any analysis of ripeness.[68]  The fitness of an issue for judicial decision depends at least in part on the extent to which the issue is "purely legal, and will not be clarified by further factual development."[69]  In considering the hardship to the parties of withholding consideration, a court must be mindful that "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief.  If the injury is certainly impending, that is enough."[70] Courts have recognized that applying the ripeness doctrine in the declaratory judgment context presents a unique challenge.[71]

The Sixth Circuit recently addressed the issue of standing in the context of § 1926(b).  In *Trumbull County Board of Commissioners v. Village of Lordstown, Ohio*, the court dismissed the County's § 1926(b) action for lack of standing.  The court focused on the element of standing requiring plaintiff to have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent."[72]  The court noted that, while protection from competition is normally not a legally protected interest, § 1926(b)

---

[68]*Id.* at 581 (quoting *Abbott Labs.*, 387 U.S. at 149).

[69]*Id.*; *see also Abbot Labs.*, 387 U.S. at 149.

[70]*Reg'l Rail Reorg. Act. Cases*, 419 U.S. at 143 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 593, *reaff'd*, 263 U.S. 350 (1923)).

[71]*Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000); *R.I. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir. 1994) ("Applying this [*Abbott Labs*] test in the declaratory judgment context often requires custom tailoring, for there are at least two salient differences between declaratory actions and the mine-run of other cases: first, declaratory relief is more likely to be discretionary; and, second, declaratory actions contemplate an '*ex ante* determination of rights' that 'exists in some tension with traditional notions of ripeness'" (citations omitted)).

[72]811 F.3d 226, 227 (6th Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) (citations and footnote omitted).

provides temporary protection along those lines.[73]  Specifically, that statute provides that during the term of a loan by the Department of Agriculture to a sewer provider, the provider's service "shall not be curtailed or limited" by competition with another provider.[74]  Therefore, because the County owed $3.3 million to the Department, § 1926(b) afforded the County a legally protected interest in freedom from competition.[75]  The court went on to explain, however, that the County had not shown any actual or imminent invasion of that interest, specifically, evidence that the defendants "curtailed or limited" the County's service or threatened to do so sometime soon.[76]  In that case, although the Village built sewer lines to extend sewer service, it had not actually provided sewer service to any customer serviced by the County.  Thus, the County did not show any curtailment or limitation of any kind, which meant the County could not show any actual invasion of an interest protected by § 1926(b).[77]  The court further found that no such invasion was imminent; the mere fact that sewer lines had been constructed did not show that the Village intended to compete with the County in the near future, as the protection offered by § 1926(b) is only temporary and nothing prevents the Village from preparing to compete with the County after it paid off its federal loans.[78]

Similarly, Douglas-4 would have no standing to commence a § 1926(b) action of its own based on the facts as they presently exist.  Indeed, Douglas-4 argues as much and does not assert

---

[73]*Id.* (citing *Lujan*, 504 U.S. at 578).

[74]*Id.*

[75]*Id.* (citing *Hardin v. Kentucky Utilities Co.*, 390 U.S. 1, 5–6 (1968)).

[76]*Id.*

[77]*Id.*

[78]*Id.* at 227–28.

a counterclaim alleging a violation of § 1926(b) in this action.  As Eudora stressed in its correspondence with Douglas-4, since the conclusion of the 2007 lawsuit, it has done nothing to curtail or limit the water service provided by Douglas-4.  Citing *Trumbull*,  Douglas-4 asserts that since it does not have standing to bring a § 1926(b) action, it follows that Eudora likewise lacks standing in this declaratory judgment action.

Eudora contends that its has a legally protected interest by virtue of K.S.A. 12-527 and/or 12-541, which provides the mechanism for a city to transition water service from a rural water district following annexation by the city, if it chooses to do so.  Eudora maintains that it has the legal right to transition water service by virtue of *Eudora II*, and Douglas-4 avers otherwise.  Eudora suggests that the invasion of that legally protected interest is Douglas-4's continued assertion of § 1926(b) protection in the wake of *Eudora II*, thus prohibiting Eudora from completing its transition of water services initiated nearly a decade ago.  Eudora contends that this refusal to transition water service, rather than the threat of a lawsuit, is the direct cause of the City's injury.  The Court agrees.  Although Douglas-4 does not yet have standing to bring such a suit, it is apparent that any further steps taken by Eudora, e.g., issuing notice of a different water service provider under 12-541(a), would be at best a futile exercise, as Douglas-4 has clearly asserted § 1926(b) protection.  Any designation or further progression under 12-527 and/or 12-541(a) is effectively meaningless unless and until Douglas-4's renewed claim of protection is resolved.

This conclusion finds support in *MedImmune, Inc. v. Genetech, Inc.*, where the Supreme Court held that a declaratory judgment does not require an actual violation of the law to present a

justiciable controversy.[79]  That case involved "the application of the Declaratory Judgment Act to situations in which the plaintiff's self-avoidance of imminent injury is coerced by threatened enforcement action of a private party rather than the government."[80]  In that case, a patent licensee sought a declaratory judgment as to whether a certain patent was invalid or unenforceable before the licensee had even breached the relevant licensing agreement.[81]  Prior to seeking declaratory relief, the licensee received a letter from the patent holder stating a "clear threat" to enforce specific patent rights if the patentee failed to make royalty payments under the parties' license agreement.[82]  Petitioner did not want to risk a termination of the agreement and a patent agreement suit, so paid the royalties and filed a declaratory judgment action, seeking a statement of its obligations under the contract.[83]  The Court found that the petitioner's own acts eliminated the "imminent threat of harm," but such acts were "coerced by threatened enforcement action of a *private party* rather than the government."[84]  The Court found that such correspondence demonstrated the parties' "adverse legal interests" in a justiciable infringement dispute.[85]  The Court held that the petitioner was not required to break or terminate its license agreement before seeking a declaratory judgment that the underlying patent is invalid,

---

[79]549 U.S. 118, 137 (2007).

[80]*Id.* at 130.

[81]*Id.*

[82]*Id.* at 122.

[83]*Id.*

[84]*Id.* at 129–30 (emphasis in original).

[85]*See id.* at 127, 137.

unenforceable, or not infringed.[86]

 As in *MedImmune*, Eudora's self-avoidance of imminent injury is coerced by threatened enforcement action by Douglas-4.  The Court finds that Eudora need not abandon its rights nor "cross the line" and risk § 1926(b) liability prior to seeking declaratory relief to challenge the basis for such threats—whether Douglas-4 has § 1926(b) protection under the post-*Eudora II* reaffirmation scenario.

 With standing established, the Court further determines this action involves a predominately legal question based upon undisputed facts, and is thus ripe.[87]  The issue before the Court is purely legal and will not be clarified by further factual development.[88]  Here, the Court's judgment will be conclusive because it will determine, based on all facts to date, whether Douglas-4 has § 1926(b) protection, which is keeping Eudora from completing transition of water service.  Moreover, it is clear from the parties's submissions and statements at oral argument that Eudora does not have any alternative remedy other than seeking relief from this Court—Douglas-4 has made clear that it believes it has federal protection prohibiting Eudora from transitioning services, and considers any further steps taken by Eudora under either 12-527 or 12-541 a violation of § 1926(b).  Further, this Court's judgment on that issue will provide some utility to the parties: if Douglas-4 is found to have § 1926(b) protection, Eudora cannot proceed to transition water services; but if not, Eudora will proceed.[89]

---

[86]*Id.*

[87]*See Thomas v. Union Carbide Ag. Prods. Co.*, 473 U.S. 568, 580 (1985).

[88]*Id.*

[89]*See Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No 66*, 580 F.3d 185, 191 (3d Cir. 2009) (explaining predominately legal questions are generally amenable to a conclusive determination); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008) (holding the parties may have other

Accordingly, the Court is satisfied that it has Article III jurisdiction, and proceeds to analyze the merits of the case.

### B.      Res Judicata

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been raised* in the prior action."[90]  "Under Tenth Circuit law, res judicata applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties in the two suits; and (3) identity of the cause of action in both suits.[91]  The Tenth Circuit has adopted the "transactional" approach from § 24 of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for claim preclusion.[92]  Both parties seek summary judgment on the issue of res judicata:  Eudora in Count I of its Complaint, and Douglas-4 as an affirmative defense.  The Court addresses the parties' respective arguments together.

Eudora argues that all three elements of res judicata exist here.  First, in *Eudora II*, the Tenth Circuit directed this Court to enter summary judgment in favor of then-defendant Eudora, which the Court proceeded to do on September 5, 2013.  As part of this final judgment, the Court held that "Plaintiff [Douglas-4] is not entitled to any protection under 7 U.S.C. § 1926(b).  In as much as all of Plaintiff's claims were based upon the enforcement of rights it claimed under

---

relationships or rights to clarify, but the court focuses only on whether a declaratory judgment will clarify the legal relationships presented to the district court).

[90]*B-S Steel of Kan., Inc. v. Tex. Indust., Inc.*, 327 F. Supp. 2d 1252, 1258 (D. Kan. 2004) (citing *Wilkes v. Wyo. Dep't of Emp.*, 314 F.3d 501, 503–04 (10th Cir. 2002)) (emphasis added).

[91]*N.M. Consol. Constr., LLC v. City Council of the City of Santa Fe*, 97 F. Supp. 3d 1287, 1307 (10th Cir. 2015) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005))

[92]*Wilkes*, 314 F.3d at 504.

§ 1926(b), all of Plaintiff's claims are hereby dismissed with prejudice."  Second, the two parties

in both action are identical.

And third, Douglas-4's procurement of the First State Bank Loan and corresponding

USDA Guarantee, followed by the self-serving purported Reaffirmation, are all part of the same

transaction or series of transactions out of which Douglas-4's claim for § 1926(b) protection

arises.[93]  Eudora argues that as to the origin of the First State Bank Loan and Guarantee,

Douglas-4 initiated them in response to Eudora's annexations, which it perceived as a threat to

its customer base.  As to its motivation for pursuing both the First State Bank Loan and

Guarantee, Douglas-4 admitted that its only reason was to obtain § 1926(b) protection, and not

because it needed the Loan or Guarantee to finance the Johnson-6 project.  After *Eudora II*

negated the merits of Douglas-4's § 1926(b) claim on July 1, 2013, Douglas-4 wasted no time in

continuing its transaction or series of transactions designed for the sole purpose of obtaining §

1926(b) protection.  Despite the fact that the original $250,000 had already been spent laying

new pipes and building a new pumping station, and which Douglas-4 had long been in the

process of repaying, Douglas-4 immediately responded with the Reaffirmation.  Thus, Eudora

argues, the origin could not be clearer—Douglas-4 unilaterally initiated and purported to

"reaffirm" its acceptance of the First State Loan and corresponding Guarantee, an act that no

one, including Eudora or the Tenth Circuit had questioned or challenged.  In sum, under the

transactional approach required by the Tenth Circuit, the First State Loan, Guarantee, and

Reaffirmation were all part of the same transaction or series of transactions.

---

[93]*See King v. Union Oil of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997) (applying the "transactional approach" of the Restatement (Second) of Judgments to determine what constitutes a "cause of action" for res judicata purposes).

Moreover, Eudora argues, had Douglas-4 timely initiated its "reaffirmation" conduct following the enactment of amended K.S.A. 82a-619(g), or had it timely asked this Court for relief in the prior litigation once it initiated the Reaffirmation, it cannot be reasonably disputed that Douglas-4 could have brought its claim as a conventional trial unit, instead of requiring piecemeal litigation.  On July 9, 2013, just eight days after *Eudora II* was rendered, Douglas-4 passed the resolution to reaffirm the loan with First State Bank and the USDA Guarantee.  This Court then entered an Order of Final Judgment on September 5, 2013.  On January 21, 2014, the Supreme Court denied Douglas-4's petition for writ of certiorari.  And on March 13, 2014, costs were taxed against Douglas-4.  Eudora notes that although amended K.S.A. 82a-619(g) was effective July 1, 2012, Douglas-4 was apparently unconcerned with the need for any "reaffirmation" for over a full year, waiting until all of the issues had already been resolved adversely against it in *Eudora II*.

Eudora contends that the Tenth Circuit's mandate did not issue until August 5, 2013, leaving open the opportunity for Douglas-4 to apprise the Court of the "new developments" and bring those theories to this Court's attention.  *Eudora II* was issued on July 1, 2013, but remanded for this Court to enter summary judgment in Eudora's favor on a single issue: "whether Douglas-4's USDA guarantee was 'necessary to carry out the purposes of its organization."  The Tenth Circuit further ordered the Court and the parties to "proceed in a manner consistent with this opinion."  At that point, and as Douglas-4 continued to seek review into the next year, Eudora urges that Douglas-4 could have asked this Court to consider its "reaffirmation" issues, or sought a motion to amend or other relief from the Court—instead, it

remained silent on this point.[94]  Indeed, on August 16, 2013, Douglas-4 requested this Court to

delay entry of final judgment, accusing the Tenth Circuit of ignoring its prior decision in *Eudora*

*I* and disregarding earlier findings, but failing to mention its new reaffirmation facts or theory,

all of which was conceived by July 2013.  Counsel for Douglas-4 conceded at oral argument that

they believed *Eudora II* rendered the Guarantee void, yet did not raise the issue with this Court

in the context of remand.  Thus, Eudora argues, Douglas-4's notion that it could not have

brought these issues to the Court for consideration because of their timing is erroneous.

Moreover, Eudora argues, Douglas-4 could have "reaffirmed" the First State Loan,

Guarantee or both, at any time after July 1, 2012 through the conclusion of the prior litigation.

At no point in the prior litigation, however, did Douglas-4 seek leave to amend its pleadings as

this Court proceeded in a manner consistent with the *Eudora II* mandate and opinion, nor did it

file a motion pursuant to Fed. R. Civ. P. 59(e), 60(b), or otherwise to advise the Court of its

"new reaffirmation evidence" that existed well before this Court entered final judgment, and

which Douglas-4 now argues should excuse it from application of the final judgment.  Instead,

Eudora contends, Douglas-4 remained silent.

Douglas-4 admits that the first two elements have been met, but responds that there is no

same claim or cause of action.  The Court agrees.  Douglas-4's current claim of protection under

§ 1926(b) arises from the purported re-authorization of the USDA guarantee and re-acceptance

of aid by Douglas-4, all of which occurred after *Eudora II*.  Thus, any "claim" to § 1926(b)

protection is a new claim, premised on new law (amended 82a-619(g)) and new facts: Douglas-

---

[94]It is now apparent to the Court that counsel for Douglas-4 proposed the language for the final judgment on
remand in support of its present theory of reaffirmation, albeit without revealing the reaffirmation to the Court or
Eudora.

4's re-acceptance of aid in the form of a re-authorized USDA guarantee.  Because Eudora did not revive its interest in replacing Douglas-4 as the water service provider for the 2006 Annexations until after judgment was entered in the prior litigation, res judicata does not bar adjudication of new facts not present in the prior litigation, applied to new law.  And even if Douglas-4 had, prior to final judgment, initiated the reaffirmation on July 2, 2012, it still would have no claim to bring, as *Eudora II* established that amended 82a-619(g) only applies prospectively to Eudora's conduct on or after July 1, 2012.  As previously discussed, Eudora has taken no action since then to curtail or limit Douglas-4's water services.

The Court likewise rejects Douglas-4's claim that it is Eudora that has created impermissible piecemeal litigation, because Eudora renounced and abandoned all of its 12-527/12-541 counter-claims in the prior litigation and kept silent about any long range plans to eventually replace Douglas-4 as the water service provider in the 2006 Annexations.  Douglas-4 insists that, only after the prior litigation was final did Eudora announce its desire to reassert its 12-527/12-541 claims, the identical claims it brought or could have brought in the prior litigation.  Thus, Douglas-4 contends, res judicata precludes Eudora from re-initiating or resuming its 12-527/12-541 claims that it did or could have presented in the prior litigation, which in turn, precludes Eudora's challenge to Douglas-4's renewed claim of § 1926(b) protection.

Douglas-4's argument is without merit.  First, it is undisputed that in 2006, Eudora initiated the procedures under 12-527 to transition water service from Douglas-4 for certain areas annexed by the City.  In response to Eudora's demand, Douglas-4 sued Eudora, asserting one claim: federal protection under § 1926(b).  By denying Douglas-4 was entitled to § 1926(b)

protection in the Prior Litigation, Eudora adequately preserved and ultimately prevailed on its claims: if Douglas-4 had federal protection, then Eudora would be prohibited from pursuing further transition of water service.  Conversely, if the Court agreed with Eudora, Douglas-4's only defense would be negated, and Eudora would be able to continue the transition of water services.  Thus, there was no need for Eudora to assert a "claim" or counterclaim under 12-527/12-541, because the ultimate issue would be decided by the claims asserted by Douglas-4.[95] The fact that Eudora did or did not obtain certain additional declaratory or injunctive relief has no bearing on whether the underlying claims brought by Douglas-4 had merit.  Accordingly, while Douglas-4 attempts to shift the focus on claims brought by Eudora, the critical aspect of the prior litigation was the federal claim brought by Douglas-4, which both parties litigated throughout the case, ultimately resulting in a final judgment on the merits for Eudora.

Second, the Court agrees that Eudora has never abandoned any claims.  While Eudora concedes that in the prior litigation, it dismissed without prejudice its tort counterclaims for tortious interference, fraud, and abuse of process, it never abandoned its efforts to transition water service under 12-521/12/541 in disputing Douglas-4's § 1926(b) protection claims.  Rather, the City has consistently and without exception sought to transition water service from Douglas-4 to Eudora in the Annexed areas, before the prior litigation and throughout the prior litigation, eventually achieving victory through two appeals.  The notion that Eudora acquiesced in the position that Douglas-4 had § 1926(b) protection or that Eudora had anything other than the absolute and unconditional right to transition water service pursuant to 12-521/12-541 is

---

[95]*Cf. ORI, Inc. v. Lanewala*, 147 F. Supp. 2d 1069, 1083 (D. Kan. 2001) (recognizing that "Kansas courts hold that a single cause of action exists when a plaintiff brings a claim that should have been asserted as a compulsory counterclaim in an earlier lawsuit brought by the defendant.") (citation omitted).

specious.  As Eudora posits, why would it be litigating Douglas-4's purported § 1926(b)

protection if Eudora had no intent of transitioning water service under 12-527?  In fact, that was

the only reason for Eudora to continue litigating the issue in *Eudora I* and *Eudora II*, as well as

pursue the issue all the way through entry of final judgment.  The issue of Eudora's intent to

transition is further evident in the language of the permanent injunction entered after trial,

enjoining Eudora from limiting or curtailing water service provided or made available by

Douglas-4.[96]  And further, the Final Order of Judgment on Remand states that Eudora's

counterclaims were either dismissed without prejudice (the tort claims), or rendered moot (the

remaining declaratory judgment claim).[97]

    In the wake of *Eudora II*, and threatened with Douglas-4's new claims of § 1926(b)

violations and corresponding threats of attorneys' fees, Eudora posits that it was forced into a

quandary as to how it could properly determine its right to transition water service in relation to

Douglas-4's 1926(b) protection claim. The existing subject matter injected into the prior

litigation by Douglas-4, and properly denied by Eudora, brought the substantive issues before

this Court.  The Court agrees that Eudora's ultimate victory on the merits in the prior litigation

simply cannot be construed as warranting res judicata against it in the instant declaratory action.

Eudora has not asserted any claims for damages in this lawsuit, much less any that were dropped

in a previous lawsuit or from a single tort.  In fact, Eudora simply seeks declaratory relief, which

is clearly permitted under the circumstances, considering Eudora and this Court were left in the

dark as to Douglas-4's post-*Eudora II* reaffirmation activities.

---

[96]*See* No. 07-2463, Doc. 409.

[97]Doc. 22, Stip. Fact 52.

Summary judgment is denied on both parties' res judicata claims.  The Court thus turns to the merits of Douglas-4's claim of protection under § 1926(b).

### C.      Whether Douglas-4's Section 1926(b) claim fails on the merits

Eudora argues that it is entitled to summary judgment on Count II, because Douglas-4's claim of § 1926(b) protection lacks merit as Douglas-4's reaffirmation conduct is not "accepting financial or other aid" under amended  82a-619(g).  Under the amended statute, a rural water district "shall have the power to:

> (g) cooperate with and enter into agreements with the secretary of the United States department of agriculture or the secretary's duly authorized representative **necessary** to carry out the purposes of its organization; and to accept financial or other aid which the secretary of the United States department of agriculture is empowered to give pursuant to 7 U.S.C. § 1921 et seq., as in effect on the effective date of this act.  (emphasis added).

It is undisputed that Douglas-4 cannot qualify for § 1926(b) protection under: (a) either clause of the prior version of 82a-619(g); or (b) the first clause of amended 82-619(g), as conclusively resolved in the prior litigation.  As the parties agree, the dispute hinges on whether Douglas-4 can qualify for § 1926(b) protection under the second clause of amended 82a-619(g), which in part requires Douglas-4 to show that it has "accepte[ed] financial or other aid which the secretary of the United States department of agriculture is empowered to give pursuant to 7 U.S.C. § 1921 et seq., as in effect on the effective date of this act."

Eudora argues that under the undisputed facts, and as a matter of law, Douglas-4 has not accepted financial or other aid as contemplated by amended 82a-619(g)—specifically, the protection of § 1926(b) is not "aid" under 7 U.S.C. § 1921 *et seq*.  In fact, Eudora argues, Douglas-4 has not "accepted" anything since amended 82a-619(g) became effective on July 1,

32

2012, much less "financial or other aid" from the USDA.  After the Tenth Circuit affirmed this Court's ruling that the statue was not retroactive, Eudora contends that Douglas-4 concocted its plan to "reaffirm" its 2004 First State Loan and corresponding Guarantee, which was practically and legally insignificant, plainly designed for the sole purpose of creating an excuse for Douglas-4 to claim protection under § 1926(b), in direct contravention of the prior litigation.  In fact, Eudora argues, none of the terms or provisions of the underlying loan or guarantee were changed.  Thus, the reaffirmation was not acceptance of any "financial or other aid," and Douglas-4 has no protection under 1926(b).

Douglas-4 counters that a guarantee issued by the USDA to further secure the Bank loan is "aid," as it functions to bolster the credit of Douglas-4.  Douglas-4 asserts that amended 82a-619(g) constitutes legislative ratification of the Douglas-4's acceptance of the reaffirmed Guarantee, which applies prospectively.  Douglas-4 concedes that it took full advantage of the amended statute and certainly encouraged the USDA to reauthorize its Guarantee, so that Douglas-4 could accept its "aid."  Indeed, for the first time at oral argument, counsel for Douglas-4 argued that *Eudora II* effectively *voided* the 2004 USDA Guarantee; because *Eudora II* held that § 1926(b) protection was not available because of the necessary requirement,  re-acceptance of the Guarantee was both necessary and prospective.  Thus, Douglas-4 urges, pursuing such a "plan" does not invalidate Douglas-4's 1926(b) protection, regardless of Eudora's slur, and Eudora cannot question the legal validity of such protection.

The Court disagrees.  Even if the Kansas legislature intended to help water districts like Douglas-4, it still fails to meet the statutory requirements of amended 82a-619(g).  First, from a chronological standpoint, the record before the Court shows it is logically impossible that

Douglas-4 has accepted anything since July 1, 2012.  Douglas-4's argument turns on three events: (1) the amendment of 82a-619(g); (2) the USDA's "reauthorization" of the Guarantee; and (3) Douglas-4's "acceptance" of this "aid."  The record shows that amended 82a-619(g) became effective on July 1, 2012.  *Eudora II* was rendered on July 1, 2013.  On July 9, 2013, by resolution, Douglas-4 purportedly "reaffirmed" receipt of the Guarantee.  But at the time of the resolution, there was nothing "new" or otherwise for Douglas-4 to accept; it was simply unilateral, self-serving action by Douglas-4 in an attempt to avoid the *Eudora II* decision.  Moreover, the resolution directed Douglas-4's attorney to notify the USDA and First State Bank of Douglas-4's desire and request that those entities "reaffirm" the First State Loan and Guarantee.  Accordingly, the only evidence of any action by Douglas-4 does not purport to be acceptance of anything, much less "financial or other aid."

Moreover, the record reflects that Douglas-4 did not "accept" the reaffirmation.  On July 30, 2013, the USDA purportedly "reaffirmed" its Guarantee of the First State Loan.  As Eudora points out, on one hand, this "reaffirmation" provides nothing for Douglas-4 or First State Bank to "accept."  Thus, it is logically impossible to "accept" the "reaffirmation," just as it was logically impossible for Douglas-4 to "accept" the Guarantee.  On the other hand, even if the reaffirmation could be accepted, such acceptance must necessarily occur *after* the reaffirmation was made on July 30, 2013.  There is nothing in the record of any action by Douglas-4 on or after July 30, 2013, much less any action "accepting" the reaffirmation.  Notably, even the pre-existing resolution on July 9, 2013 does not purport to accept or re-accept the USDA's subsequent reaffirmation, which would be logically impossible; the Guarantee, like the reaffirmation, flowed to First State Bank and at most, Douglas-4 cooperated in that initial

34

transaction.

Further, the "reaffirmation" is not "financial or other aid."  As Eudora has argued, there was nothing to "accept"; for purposes of this lawsuit, the reaffirmation is a legal nullity.  As this Court detailed in the Prior Litigation, by the time the Guarantee was made by the USDA, the First State Loan had already been closed, the funds had already been disbursed, and the underlying Johnson-6 project had already been substantially completed.  In fact, this Court rejected Douglas-4's argument to this effect in its June 19, 2012 Memorandum and Order Denying the parties' motions for summary judgment on remand.  In that order, the Court discussed amended 82a-619(g), rejecting Douglas-4's attempt to convert the Guarantee into "financial or other aid" under the second clause:

> Moreover, even if given retroactive effect, the Court disagrees that the issue of necessity of the Guarantee is no longer an issue. Douglas-4 makes the conclusory statement that federal loan guarantees are "financial or other aid" under the second clause, instead of "cooperation" with the USDA under the first clause, as the Tenth Circuit determined.  Indeed, the Circuit specifically found "there is only one clause under which Douglas-4 was authorized to accept a federal loan guarantee," the first clause, as the interaction between Douglas-4 and the USDA qualified as "cooperation," and accordingly, must be necessary to carry out a purpose of Douglas-4's organization.  For this Court to now determine that the federal Guarantee is transformed into "financial or other aid" that does not require necessity would render the first half of the statute a nullity and ignore the scope of the Tenth Circuit's remand.  Thus, the Court turns to the issue before it on remand: whether Douglas-4's cooperation to secure a Rural Development guarantee was necessary to carry out the purposes of its organization under § 83-619(g).[98]

This analysis equally applies to the reaffirmation, as Douglas-4 merely repeats its same

---

[98]Doc. 485 at 16-17 (citing *Eudora I*, 659 F.3d at 977).

flawed argument.  Douglas-4 is bound by the Tenth Circuit's conclusion that the Guarantee is "cooperation," and not "financial or other aid."[99]  At most, the reaffirmation might be construed as "cooperation" under the first clause of Amended 82a-619(g).  But as *Eudora II* made clear, that cooperation would never be "necessary" under the facts of this case.  Regardless of how Douglas-4 attempts to characterize the legislative amendment, it necessarily follows that if the Guarantee is not "financial or other aid," its purported reaffirmation likewise cannot be financial or other aid.  Summary judgment is granted in favor of Eudora on this claim.[100]

### D.    Statute of Limitations

Douglas-4 moves for summary judgment on its defense that Eudora's 12-527/12-541 claims associated with the 2006 Annexation are barred or have become extinguished or unenforceable under the applicable Kansas statute of limitations, K.S.A. 60-512(2), which states: "[t]he following actions shall be brought within three (3) years: . . . (2) An action upon a liability created by a statute other than a penalty or forfeiture."  This argument is without merit.

First, Douglas-4 has failed to show that 60-512(2) applies to this case.  Neither K.S.A. 12-527 or 12-541 creates a "liability" as contemplated by 60-512(2).  While both are statutory enactments, Douglas-4 fails to articulate the liability created by those statutes.  Instead, they

---

[99]*Eudora I*, 659 F.3d at 977.

[100]The Court does not reach Eudora's alternative argument in Count III that even if the reaffirmation could be construed as the acceptance of "financial or other aid," it would still not be "necessary," as required by amended 82a-619(g).  The Court notes, however, that Eudora's argument that under the plain language of the statute, the "necessary" requirement applies to both clauses of the statute appears to lack merit.  The Court further notes that Eudora appears to misconstrue its previous holding that alternatively, even if the amended subsection (g) applies retroactively, "it would not relieve Douglas-4 from satisfying the 'necessary' requirement." *Eudora II*, 720 F.3d at 1277, n.1.  As set forth in full above, the full quote from the Court's order went on to discuss why the USDA Guarantee did not constitute "financial or other aid," under the second clause" but rather, "cooperation" under the first clause, and thus must be necessary to carry out the purpose of Douglas-4's organization.  The second clause of amended 82a-619(g) has no such necessary requirement. *See* Case No. 07-2463 at Doc. 485.

provide a procedure or mechanism by which cities can transition water service from rural water districts following annexation. Without a corresponding liability, by its plain language K.S.A. 60-512(2) is inapplicable. Further, there is no time constraint within either statute for a city to elect to initiate the transition of water service following annexation, and the Tenth Circuit has held that neither statute compels an annexing municipality to designate itself or some other water supplier.[101] Finally, in order for K.S.A. 60-512(2) to apply, Kansas law appears to require some aspect of damages. "A liability is 'created by statute' for purposes of K.S.A. 60-512(2) where liability for resultant damages would not arise but for the statute. A statute that merely provides a procedure for obtaining relief does not trigger K.S.A. 60-512(2)."[102] The procedures set forth in 12-527 and 12-541 do not involve any aspect of damages, but seem more closely akin to a "procedure for obtaining relief." Accordingly, Douglas-4 has not met its burden to show how this statute of limitations is applicable.[103]

Even if the statute of limitations was applicable, Eudora brought this action within three years of the date it accrued. "In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises, the true test being at what point in time the plaintiff could first have filed and prosecuted his action to a successful

---

[101] *Eudora I*, 659 F.3d at 985.

[102] *Wright v. Kan. Water Office*, 881 P.2d 567, 572 (Kan. 1994) (citations omitted); *McCormick v. City of Lawrence*, 104 P.3d 991, 992 (Kan. 2005) ("K.S.A. 60-512(2) applies when a statute creates a liability where liability would not exist but for the statute. If the statute merely provides a procedure for obtaining relief, it does not trigger K.S.A. 60-512(2).").

[103] *Keith v. Koerner*, No. 11-CV-2281-DDC, 2014 WL 6473222, at *7 (D. Kan. Nov. 18, 2014) ("The statute of limitations is an affirmative defense and the burden of pleading and providing its applicability rests on the defendant.") (citations omitted).

conclusion."[104]   In this case, Douglas-4 filed the previous lawsuit in September 2007, shortly

after Eudora selected an appraiser pursuant to K.S.A. 12-527.  By final judgment dated

September 5, 2013, Eudora ultimately prevailed; the Supreme Court denied Douglas-4's petition

for writ of certiorari on January 21, 2014.  Accordingly, 2014 was the point in time when Eudora

could initiate or resume its attempt to transition water services pursuant to 12-527 or 12-541

without fear or threat that Douglas-4 would raise § 1926(b) violations.  This declaratory action

was filed in August 2014, bringing it within any three-year statute of limitations.[105]  The statute

of limitations defense fails as a matter of law.

###    E.    Failure to Join Indispensable Party

This Court previously denied without prejudice Douglas-4's motion to dismiss on this

ground.[106]  Douglas-4 reasserts that the USDA and First State Bank must be joined as necessary

or required parties under Fed. R. Civ. P. 19.   Under Rule 19(a), a party is a required or necessary

party if

> (A) in that person's absence, the court cannot afford complete
> relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the
> action and is so situated that disposing of the action in the person's
> absence may:
>
>> (i) as a practical matter impair or impede the
>> person's ability to protect the interest; or

---

[104]*Johnston v. Farmers Alliance Mut. Ins. Co.*, 545 P.2d 312, 317 (Kan. 1976) (citation omitted).

[105]The Court does not reach Eudora's additional arguments that K.S.A. 60-512(2) does not apply because the transition and provision of water service involves a government function for which immunity exists, or that it is acquiring real property or interests therein, thus triggering the exception found in K.S.A. 60-521(1).

[106]Doc. 23.

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.[107]

If a person is required, the court must determine whether joinder is feasible, *i.e.*, whether the person is subject to service of process and whether joinder will deprive the Court of subject matter jurisdiction.[108]

As was the case in the motion to dismiss, Douglas-4 does not argue that the USDA or First State Bank are required parties under Rule 19(a)(1)(A), but relies instead on Rule 19(a)(1)(B).  Douglas-4 asserts that the USDA and First State Bank "both claim an interest in the subject of this lawsuit."  However, neither the USDA or the Bank has ever attempted to participate in or claimed an interest in the subject of this lawsuit or the prior litigation, as expressly required by Rule 19(a)(1)(B).

Further, Eudora does not challenge the validity of the loan by First State Bank, which was guaranteed by the USDA, in any way, and this has never been an issue in this case or the prior litigation.[109]  Although Douglas-4 urges that *Eudora II* had the "practical effect" of rendering the Guarantee void, the *validity* of the loan documents was not an issue in the Prior Litigation and the Tenth Circuit did not so rule.  Instead, the issue was whether Douglas-4 had complied with the Kansas statutes in order to be entitled to § 1926(b) protection.  Neither party has a legally protected interest, as the ruling by this Court in favor of Eudora on the § 1926(b)

---

[107]Fed. R. Civ. P. 19(a).

[108]*Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001).

[109]*Cf. Okmulgee Cnty. Rural Water Dist. No. 2 v. City of Okmulgee*, No. CIV-06-167-KEW, 2006 WL 2251811, at *2 (E.D. Okla. Aug. 3, 2006) (concluding USDA was necessary party to § 1926(b) action where city filed counterclaim asserting that water district federal loans obtained from USDA were void).

issue would not prevent Douglas-4 from repaying the loan to First State Bank.  Nor does the

ruling favorable to Eudora subject Douglas-4 to inconsistent obligations, as nothing would

prevent the repayment of the loan to First State Bank; indeed, if Eudora successfully transitions

water services from the District, it would be paying Douglas-4 for those facilities.

Thus, neither the USDA nor First State Bank are required parties under Rule 19(a)(1)(B).

Douglas-4's motion for summary judgment on this issue is denied.

### F.     Douglas-4's Affirmative Defenses

In order to satisfy its summary judgment burden, Eudora need not negate Douglas-4's

affirmative defenses, but merely point out the absence of evidence to support one or more of the

essential elements of the non-movant's affirmative defenses.[110]  The Court agrees that many of

the affirmative defenses are subsumed by Douglas-4's res judicata defense discussed above, and

several should be summarily rejected because Douglas-4 has failed to adequately brief them.[111]

Indeed, as discussed below, Douglas-4 does not even bother to recite the elements or applicable

law for these defenses, and abandons the defenses in its reply.  Nevertheless, the Court briefly

addresses the defenses in the order listed by Douglas-4:

### 1.     Judicial Estoppel (affirmative defense "b")

Douglas-4 argues that Eudora abandoned all its 12-527/12-541 claims associated with the

2006 Annexations in the prior litigation, and that judicial estoppel precludes Eudora from

reversing position by now attempting to reassert them.  Eudora responds that the Court should

---

[110]*Conoco Inc. v. J.M. Huber Corp.*, 148 F. Supp. 2d 1157, 1164-65 (D. Kan. 2001) (citing *Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[111]*See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (holding, "[w]e do not consider merely including an issue within a list to be adequate briefing," and "issues will be waived if they are not adequately briefed.").

reject this conclusory argument, and denies that it has ever abandoned its 12-527/12-541 claims, as previously discussed.

Judicial estoppel is an equitable doctrine that prevents abuse of the judicial process.[112]  It prohibits a party from deliberately changing positions to suit its needs.[113]  Courts consider three nonexclusive factors to determine whether judicial estoppel should be invoked: 1) "a party's later position must be 'clearly inconsistent' with its earlier position";[114] 2) "a party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled";[115] and 3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."[116]  Judicial estoppel should be applied narrowly and cautiously.[117]  For the doctrine to apply, a party's later position must be clearly inconsistent with its former position in another legal proceeding.[118]

Here, Eudora has consistently sought to transition water service in the annexed areas.  It did so before the prior litigation, throughout that litigation, and then ultimately prevailed on appeal.  Eudora continued its efforts after entry of final judgment and ever since, which is why

---

[112]*Patriot Mfg. LLC v. Hartwig, Inc.*, 996 F. Supp. 2d 1120, 1124 (D. Kan. 2014) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

[113]*Eastman v. Union Pac. R.R.*, 493 F3d 1151, 1156 (10th Cir. 2007).

[114]*New Hampshire*, 532 U.S. at 750.

[115]*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 169 (2010) (quoting *New Hampshire*, 532 U.S. at 750).

[116]*New Hampshire*, 532 U.S. at 751.

[117]*Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1227 (10th Cir. 2011).

[118]*Queen v. TA Operating, LLC*, 734 F.3d 1081, 1087 (10th Cir. 2013)

this matter is before the Court.  This affirmative defense fails as a matter of law.

### 2.       Absence of a Condition Precedent (affirmative defenses "d" and "j")

Douglas-4 contends that Eudora's 12-527/12-541 claims are barred for want of satisfaction of a condition precedent, namely Eudora has not alleged or presented sufficient facts to demonstrate that it has any rights pursuant to those statutes associated with the 2006 Annexation, *e.g.*, it has not alleged that it has or is capable of complying with 12-527/12-541. Eudora responds that there is simply no condition precedent in the statutes, which explains why Douglas-4 did not cite any authority for this defense.  Instead, Eudora has requested that Douglas-4 follow the statutory requirements; Douglas-4 has refused and threatened action under § 1926(b).  The Court agrees that is all that is required for Eudora to maintain this declaratory action.  This affirmative defense fails as a matter of law.

### 3.       Waiver (affirmative defense "e")

Douglas-4 contends that Eudora waived and abandoned its 12-527/12-541 claims in the prior litigation.  Under Kansas law, "[w]aiver is ordinarily the intentional relinquishment of a known right and is a voluntary act.  It is the expression of an intention not to insist upon what the law affords."[119]  Douglas-4 fails to cite any authority or facts in support of this defense and as discussed above, Eudora has not waived or abandoned any claims.  This defense fails as a matter of law.

---

[119]*Sultani v. Bungard*, 131 P.3d 1264, 1267 (Kan. Ct. App. 2006) (quoting *Flott v. Wenger Mixer Mfg. Co.*, 367 P.2d 44, 51 (Kan. 1961)).

### 4.     Estoppel (affirmative defense "f")

Douglas-4 contends that by failing to assert and maintain all of its 12-521/12/541 claims in the prior litigation, Eudora is estopped to present those claims in this case, and Douglas-4 relied on Eudora's renouncement and abandonment.  Douglas-4 claims that it relied on Eudora's renouncement and abandonment of all its 12-527/12-541 claims associated with the 2006 Annexations under the doctrine of res judicata.  Equitable estoppel allows one party to prevent another "from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage."[120]  The elements of estoppel against a private party are 1) knowledge of the facts, 2) intention that the conduct will be acted upon, 2) ignorance of the true facts, and 4) detrimental reliance.[121]  In the course of rejecting estoppel arguments asserted against the government, the Supreme Court has indicated that estoppel may lie against the government if some type of "affirmative misconduct" can be shown.[122]  Douglas-4 makes no attempt to analyze or meet any of these elements, and this defense fails as a matter of law.

### 5.     Laches (affirmative defense "g")

Douglas-4 contends that similar to its statute of limitations defense, Eudora first asserted its claims in September 2007, abandoned those claims in the prior litigation, and now seeks to pursue the identical claims in this lawsuit.  Douglas-4 argues the lengthy passage of time and its reliance on Eudora's stated abandonment of those claims in the prior litigation, bars Eudora from reviving or reasserting those claims.

---

[120]*Kowalczyk v. I.N.S.*, 245 F.3d 1143, 1149 (10th Cir. 2001) (citation omitted).

[121]*Id.* (citation omitted).

[122]*Id.* (citation omitted).

"[L]aches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation."[123]  "Laches will bar relief only where the enforcement of the asserted right would work injustice."[124]  Douglas-4 fails to articulate a colorable laches theory, as it contends that Eudora's claims should be adjudicated by a statute of limitations.  Moreover, Eudora has consistently sought to transition water service in the annexed areas, and has continued its efforts after entry of final judgment and ever since, which is why this matter is before the Court.  This affirmative defense fails as a matter of law.

### 6.     Failure to Plead Adequate Facts (affirmative defense "h")

Douglas-4 argues that Eudora has failed to state a claim or plead facts upon which relief may be granted, linking this defense to its res judicata and condition precedent defense. Douglas-4 fails to adequately brief this defense, or support its theory with any material facts or legal authorities.  As this defense is apparently subsumed by Douglas-4's other defenses, it is summarily dismissed.

### 7.     Preemption (affirmative defense "i")

Douglas-4 asserts it has § 1926(b) protection, going so far as to claim that although Amended 821-619(g) does not apply retroactively, the legislature's ratification of Douglas-4's acceptance of the guarantee applies prospectively, triggering § 1926(b) protection.  Because the Court has concluded that Douglas-4 lacks § 1926(b) protection, this defense necessarily fails.

---

[123]*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1973 (2014).

[124]*Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337 (10th Cir. 1982).

### 8.      Standing (affirmative defense "k")

Douglas-4 contends that to the extent Eudora is challenging action taken by the USDA to re-authorize its guarantee of the Bank loan, Eudora has no prudential standing to challenge decisions and actions of the USDA, as a matter of law.  As Eudora is not challenging any action taken by the USDA, this defense is without merit.

### 9.      Failure to Exhaust Administrative Remedies (affirmative defense "l")

Douglas-4 contends that to the extent Eudora is challenging action taken by the USDA to re-authorize its guarantee of the Bank loan, Eudora has failed to exhaust administrative remedies pursuant to the Administrative Procedure Act.  Douglas-4 has failed to adequately brief this defense, however, and has not identified any legal authority requiring Eudora to seek an administrative remedy at all, or which specific administrative remedy it is allegedly required to pursue.  Lacking any citation to such legal authority or corresponding material fact, this defense fails as a matter of law.

### 10.      Acquiescence (affirmative defense "n")

Douglas-4 contends that by abandoning its 12-527/12-541 counterclaims in the prior litigation, Eudora acquiesced in Douglas-4's position that Eudora had no right to enforce those claims and no right to acquire Douglas-4's assets within the 2006 Annexations.  As discussed throughout this opinion, Eudora did not abandon its claims, and this defense fails as a matter of law.

### G.      Right to proceed under K.S.A. 12-527 or 12-541

In addition to its claim that Douglas-4 lacks any protection under § 1926(b), Eudora seeks a declaration Kansas law permits the City to initiate or resume—and requires Douglas-4 to

follow and complete—the procedures set forth in K.S.A. 12-527 (2009), or alternatively, those

set forth in K.S.A. 12-541 (current), without fear or accusation that Eudora would somehow be

violating any protection afforded by § 1926(b).   Because the Court has ruled that Douglas-4

lacks protection under § 1926(b), it follows that Eudora may proceed accordingly to transition

water services under Kansas law, without running afoul of or violating § 1926(b).  Likewise, the

Court has ruled that following any such procedure is not barred by res judicata or the statute of

limitations.  In so ruling, however, the Court does not offer an opinion on which statute is

applicable to Eudora, 12-527 or 12-541.[125]

A district court has broad discretion whether to issue a declaratory judgment.[126]  Looking

to the relevant factors, the Court determines that declaratory relief is inappropriate with regard to

the state procedures for water transition.[127]  As Eudora clarifies in its submissions, it initiated the

state procedure under 12-527 in 2006 and 2007, and wishes to initiate, resume, and/or complete

the applicable Kansas statutory procedures to provide water service, and that Kansas law

requires Douglas-4 to follow and complete those procedures.  Eudora further states that it

believes that it should proceed under 12-527, but seeks the Court's guidance on whether to

follow the procedures set forth in 12-541.

The *Mhoon* factors weigh in favor of declining jurisdiction on this issue.  First, this

action would leave outstanding numerous procedures outlined in the statutes, including notice,

---

[125]The Court notes that in *Eudora I*, the court suggested that K.S.A. 12-541 was the applicable statute.  659 F.3d at 984–86.

[126]*MedImmune v. Gentech*, 549 U.S. 118, 136 (2007).

[127]*Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n*, 685 F.3d 977, 980–81 (10th Cir. 2012) (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

mediation, appraisal and possible appeal to the state district court.  Second, a declaratory judgment from this Court would not serve a useful purpose in clarifying the legal and procedural issues surrounding the state statutory procedures.  Third, the Court is hesitant to risk interference with the previously initiated and yet to be resumed state court proceedings.  And finally, the state court appears to provide an adequate and appropriate arena for any dispute over which statute applies.  Under all of the circumstances, the Court concludes that the state court provides a better and more effective forum for complete resolution of any controversy with respect to the Kansas statutory procedures.  Accordingly, the Court determines that declaratory relief on this portion of Eudora's request is not appropriate.

### H.    Motion to Strike "England Reservation"

Finally, after the parties submitted supplemental briefing on jurisdiction, Douglas-4 filed a "England Reservation" of its federal claims for decision by the federal courts.[128]  It appears that Douglas-4 is attempting to defeat claim preclusion in a subsequent federal action in the event this Court declines jurisdiction and sends the matter to state court to fulfill ripeness requirements.  Eudora has moved to strike, arguing that pleading is is an unauthorized modification of the Pretrial Order.[129]  Because this Court has jurisdiction and has ruled on the federal claim, the reservation and motion to strike are moot.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff the City of Eudora's Motion for Summary Judgment (Doc. 25) is GRANTED in part on the issue of whether Defendant is entitled to protection under 7 U.S.C. § 1926(b) as claimed in Count II; the Court

---

[128]Doc. 43.

[129]Doc. 44.

denies summary judgment on the res judicata issue in Count I, and does not reach the issue in Count III; while Eudora may proceed accordingly to transition water services under Kansas law without violating 7 U.S.C. § 1926(b), the Court declines to reach the issue of whether Eudora should proceed under K.S.A. 12-527 or 12-541.

**IT IS FURTHER ORDERED** that Defendant Rural Water District No. 4's Motion for Summary Judgment (Doc. 28) is DENIED;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Defendant's England Reservation (Doc. 44) is DENIED as moot.

**IT IS SO ORDERED.**

Dated: September 29, 2016

 S/ Julie A. Robinson_____
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE